UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JACOB DANIEL TUMULTY, et al.,

          Plaintiffs,

    v.

FEDEX GROUND PACKAGE SYSTEM, INC.,
et al.,

          Defendants.

No. C04-1425P

ORDER GRANTING IN PART AND
DENYING IN PART PLAINTIFFS'
MOTION FOR PARTIAL SUMMARY
JUDGMENT, GRANTING IN PART
AND DENYING IN PART
DEFENDANT'S MOTIONS FOR
PARTIAL SUMMARY JUDGMENT

This matter comes before the Court on Plaintiffs' Motion for Partial Summary Judgment regarding their overtime claim, Defendant FedEx Ground Package System, Inc.'s ("FedEx Ground") Motion for Partial Summary Judgment regarding remedies, and FedEx Ground's Motion for Partial Summary Judgment regarding Tumulty's retaliatory discharge claim. (Dkt. Nos. 57, 58, 69). Having reviewed the pleadings and supporting materials, the Court GRANTS in part and DENIES in part Plaintiffs' motion regarding overtime claims, GRANTS in part and DENIES in part FedEx Ground's motion regarding remedies, and GRANTS in part and DENIES in part FedEx Ground's motion regarding Tumulty's retaliatory discharge claim. There are genuine issues of fact as to the exact number of overtime hours Plaintiffs worked which precludes summary judgment on this claim. However, as a matter of law, the appropriate method of calculating any overtime compensation due is the "fluctuating workweek" method outlined in 29 C.F.R. § 778.114. Double damages are warranted under the Fair Labor Standards Act ("FLSA") for any overtime violations. There are genuine issues of

1   fact as to whether the three-year statute of limitations under the FLSA for overtime claims applies in

2   this case.  There are also genuine issues of fact regarding whether FedEx Ground fired Tumulty in

3   retaliation for comments Tumulty made about not being paid overtime.  However, as a matter of law,

4   the FLSA does not provide for punitive damages for retaliation claims.

5                                                            BACKGROUND

6          Plaintiffs' Jacob Daniel Tumulty and Taj Karl Uhde worked as drivers picking up and

7   delivering packages for FedEx Ground.  They worked as "secondary van drivers" ("SVDs") for

8   independent contractors ("Contractors") who had contracts with FedEx Ground to deliver packages

9   along a specific route.  At one point Tumulty also worked as a temporary driver for Pomerantz

10  Staffing Services.  Plaintiffs worked for various lengths of time between September 2001 and January

11  2003.  Tumulty was fired on January 29, 2003. Uhde quit on January 17, 2003 due to a work related

12  injury.

13         Plaintiffs sued the individual Contractors and FedEx Ground alleging claims under the Fair

14  Labor Standards Act, U.S.C. § 201 et seq, and the Washington Minimum Wage Act ("MWA"), RCW

15  49.12.005 et seq.  Specifically, they allege that they were denied pay for overtime, breaks, and meal

16  periods.  Additionally, Tumulty claims that he was terminated in retaliation for having complained

17  about the lack of overtime pay.

18                                                              ANALYSIS

19         Summary judgment is not warranted if a material issue of fact exists for trial.  Warren v. City

20  of Carlsbad, 58 F.3d 439, 441 (9th Cir. 1995), cert. denied, 516 U.S. 1171 (1996).  The underlying

21  facts are viewed in the light most favorable to the party opposing the motion.  Matsushita Elec. Indus.

22  Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  "Summary judgment will not lie if . . . the

23  evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson v.

24  Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  The party moving for summary judgment has the

25  burden to show initially the absence of a genuine issue concerning any material fact.  Adickes v. S.H.

ORDER - 2

1    Kress & Co., 398 U.S. 144, 159 (1970).  Once the moving party has met its initial burden, the burden

2    shifts to the nonmoving party to establish the existence of an issue of fact regarding an element

3    essential to that party's case, and on which that party will bear the burden of proof at trial.  Celotex

4    Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).  Additionally, "at the summary judgment stage the

5    judge's function is not . . .  to weigh the evidence . . .  but to determine whether there is a genuine

6    issue for trial."  Liberty Lobby, 477 U.S. at 249.

7    I.  Claim for Overtime Compensation

8          Both the FLSA and the MWA require employers to pay their employees one and a half times

9    the employee's "regular rate" for hours worked in excess of 40 hours a week.  29 U.S.C. §

10   207(a)(2)(c); RCW 49.46.130(1).  Employers must maintain records of the hours their employees

11   work each day and the total in each workweek, as well as the total wages paid each pay period and the

12   basis of pay.  29 C.F.R. § 516.2; WAC 296-126-040 and 050.  Under the regulations implementing the

13   FLSA, "all joint employers are responsible, both individually and jointly, for compliance with all of the

14   applicable provisions of the act, including the overtime provisions, with respect to the entire

15   employment for the particular workweek."  29 C.F.R. § 791.2.  The MWA was intended to mirror the

16   provisions of the FLSA.  Inniss v. Tandy Corp., 141 Wn.2d 517, 523, 7 P.3d 807 (2000).  Due to the

17   related nature of the MWA and the FLSA, the Washington Supreme Court treats the FLSA as

18   "persuasive authority" when interpreting the MWA.  Hisle v. Todd Pac. Shipyards Corp., 151 Wn.2d

19   853, 862, n.6, 93 P.3d 108 (2004).  Because this Court ruled on summary judgment that FedEx

20   Ground was Plaintiffs' joint employer, FedEx Ground is subject to the requirements of the FLSA and

21   the MWA vis-a-vis Plaintiffs.

22        A.  Calculating the Hours of Overtime Plaintiffs Worked

23          There are genuine issues of fact regarding the number of overtime hours that Plaintiffs actually

24   worked.  As an initial matter, the parties dispute whether the Total Duty Hours listed on the Daily

25   Settlement Records are an accurate measure of the total hours Plaintiffs worked each day; Plaintiffs

1   maintain that they are and FedEx Ground maintains that they are not. The Total Duty Hours typically

2   exceeded 40 hours per week during Plaintiffs' employment. FedEx Ground's manager Chip Anderson

3   testified that the Total Duty Hours reflect the hours a driver worked. FedEx Ground's managers

4   checked the Settlement Records for accuracy and corrected them as needed. On the other hand,

5   according FedEx Ground, these Settlement Records are merely a way of recording the amount of time

6   the drivers were away from the terminal, which FedEx Ground is required to record by Department of

7   Transportation regulations.

8         There are also genuine issues of fact as to whether Plaintiffs worked the entire time listed in the

9   Total Duty Hours or sometimes worked less and devoted some of the time to non-work (personal)

10   matters or taking breaks. There are no records regarding lunch or other breaks taken. Plaintiffs

11   maintain that they rarely took breaks, including lunch breaks. Even when they did take a lunch break,

12   they remained in the truck because they were directed not to leave the truck unattended and they were

13   on-call while on a break. Plaintiffs contend that no deductions should be taken for lunch or other

14   breaks because FedEx Ground failed in its obligation to maintain records of the exact hours worked as

15   required by the FLSA and because Plaintiffs ate lunch in their trucks while they remained on call. See

16   29 C.F.R. § 785.16 (periods when employee is completely relieved of any work duties are not work

17   time, but periods when employee is not completely relieved of work duties are work time); § 785.18

18   (rest periods between 5 and 20 minutes must be counted as work time); § 785.19 (meal breaks are not

19   work time if the employee is completely relieved of work duties but are work time if the employee is

20   required to perform any duties, whether active or inactive, such as being present at desk or particular

21   work location; rest breaks, which include coffee or snake breaks, are work time); WAC 296-126-092

22   (same requirements at FLSA regulations); Weeks v. Chief of Washington State Patrol, 96 Wn.2d 893,

23   897-98, 639 P.2d 732 (1982) (lunch hour is considered work time for MWA and FLSA purposes if

24   employee is not free to leave work site).

25

ORDER - 4

1       FedEx Ground maintains that Plaintiffs frequently took time out during the day to take care of

2   personal matters and therefore the entire time away from the terminal is not the hours they actually

3   worked.  Tumulty testified that approximately seven to ten times he went home during the weekday

4   for approximately an hour because there was no work for him and he needed to wait to return to the

5   terminal.  He also testified that he occasionally cashed checks and had to attend appointments with his

6   lawyer or court hearings (regarding a child custody dispute).  Contractor Clere testified that Tumulty

7   spent a significant amount of time talking on the cell phone about non-work related matters while

8   delivering packages.  Uhde testified that he cashed his paycheck every week in a bank next to a

9   delivery location and purchased a drink, for a total of approximately 15 minutes each time.  Once he

10  bought a watch in a store where he was delivering a package.  He testified that he may have bought

11  other things in the mall when delivering packages there.  During his occasional lunch breaks, he would

12  read the newspaper in the truck.

13      Plaintiffs contend that the lack of records should not preclude summary judgment because

14  FedEx Ground's failure to maintain records as required by the FLSA bars FedEx Ground from now

15  seeking refuge in the lack of records as a means to avoid summary judgment.  An award to an

16  employee for overtime compensation pursuant to the FLSA may be appropriate even if the award is

17  only an approximation of the overtime hours actually worked.  Alvarez v. IBP, Inc., 339 F.3d 894,

18  914 (9th Cir. 2003) (citing Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680 (1946)).  Once the

19  employee has carried his burden of showing that he worked overtime hours for which he was not

20  compensated and the only uncertainty is the amount of damages, an employer's failure to keep

21  sufficiently detailed records of the hours worked cannot bar recovery of damages.  Mt. Clemens

22  Pottery, 328 U.S. at 688.  However, even if the employee shows that the amount of hours can be

23  determined based on reasonable inferences, the employer may rebut the employee's reasonable

24  inferences "with evidence of the precise amount of work performed or with evidence to negative the

25  reasonableness of the inference to be drawn from the employee's evidence."  Id. at 687-88; Alvarez,

ORDER - 5

339 F.3d at 915.  While FedEx Ground's failure to maintain records cannot bar recovery, there are genuine issues of fact viewing the evidence in the light most favorable to FedEx Ground as to a reasonable approximation of the number of overtime hours worked.

A separate issue relates to missing Daily Settlement Records.  Apparently there are 27 missing records for Plaintiff Uhde and 137 missing records for Plaintiff Tumulty.  Plaintiffs assume for purposes of this motion that they did not work most of the days of the missing records.  The only exception is that Plaintiffs assume Tumulty worked 45 hours per week for the month of October, 2001 when he worked for Contractor Clere because the existing records show that he worked on average 49 hour weeks when working for Clere.  Again, the reasonableness of this inference must be determined by the fact finder.

### B.  Calculating the Compensation Due for Overtime Hours Worked

The parties dispute what the correct formula for calculating the rate of overtime compensation should be.  29 C.F.R. § 778.114 provides for an exception to the normal rule under the FLSA that overtime be calculated at one and a half times the regular rate.  FedEx Ground maintains that any overtime compensation due should be calculated using this "fluctuating workweek" method.  This regulation allows overtime to be calculated at only a half of the regular rate.  It states:

> An employee employed on a salary basis may have hours of work which fluctuate from week to week and the salary may be paid him pursuant to an understanding with his employer that he will receive such fixed amount as straight time pay for whatever hours he is called upon to work in a workweek, whether few or many. Where there is a clear mutual understanding of the parties that the fixed salary is compensation (apart from overtime premiums) for the hours worked each workweek, whatever their number, rather than for working 40 hours or some other fixed weekly work period, such a salary arrangement is permitted by the Act if the amount of the salary is sufficient to provide compensation to the employee at a rate not less than the applicable minimum wage rate for every hour worked in those workweeks in which the number of hours he works is greatest, and if he receives extra compensation, in addition to such salary, for all overtime hours worked at a rate not less than one-half his regular rate of pay. Since the salary in such a situation is intended to compensate the employee at straight time rates for whatever hours are worked in the workweek, the regular rate of the employee will vary from week to week and is determined by dividing the number of hours worked in the workweek into the amount of the salary to obtain the applicable hourly rate for the week. Payment for overtime hours at one-half

such rate in addition to the salary satisfies the overtime pay requirement because such hours have already been compensated at the straight time regular rate, under the salary arrangement.

29 C.F.R. § 778.114(a).[1]

There is no dispute that using this method here would not result in a hourly rate below the statutory minimum wage, nor is there any dispute that the number of hours Plaintiffs worked each week fluctuated. The parties dispute whether the "clear mutual understanding" extends only to being paid a fixed weekly salary regardless of the number of hours worked (FedEx Ground's position) or whether it also includes an understanding that Plaintiffs would be paid overtime and also requires that they have been contemporaneously paid overtime (Plaintiffs' position).

There is no Ninth Circuit case law directly interpreting this aspect of the regulation. While no appellate decision is directly on point, the relevant cases favor FedEx Ground's position.[2] The First and Fifth Circuits have both held that employers who inappropriately misclassified an employee as exempt from the FLSA may rely on § 778.114 to determine overtime due because the employees understood that they would be paid a fixed weekly salary regardless of the hours worked. Valerio v. Putnam Assoc. Inc., 173 F.3d 35, 39-40 (1st Cir. 1999); Blackmon v. Brookshire Grocery Co., 835 F.2d 1135, 1138 (5th Cir. 1988). "The parties must only have reached a 'clear mutual understanding'

---

[1]  Washington regulations utilize identical language. WAC 296-128-550. Therefore, even though the parties' arguments focus on the FLSA, the Court's ruling applies equally to Plaintiffs' state law overtime claims.

[2]  Many of the other cases addressing this particular regulation are not on point because they confronted situations where the employer explicitly made clear to the employee at the outset that it would use the fluctuating workweek method to calculate any overtime due. Griffin v. Wake County, 142 F.3d 712, 714, 716 (4th Cir. 1998); Roy v. County of Lexington, 141 F.3d 533, 547-48 (4th Cir. 1998); Condo v. Sysco Corp., 1 F.3d 599, 600, 601-02 (7th Cir. 1993); Highlander v. K.F.C. Nat. Mgmt. Co., 805 F.2d 644, 645 (6th Cir. 1986); Martin v. David T. Saunders Constr. Co., 813 F. Supp. 893, 896, 900-01 (D. Mass. 1992); Inniss v. Tandy Corp., 141 Wn.2d 517, 520, 535, 7 P.3d 807 (2000) (holding that the fluctuating workweek method of calculating overtime compensation does not violate Washington's MWA).

ORDER - 7

1    that while the employee's hours may vary, his or her base salary will not." Valerio, 173 F.3d at 40.

2    Neither court required that the employee know that he would receive overtime compensation or have

3    actually received it contemporaneously.  In fact, in Valerio, the employee understood that her

4    employer did not intend to pay her overtime.  These cases imply that the employee need not have

5    understood that he would receive overtime compensation and need not have been paid such

6    compensation contemporaneously.  See Oliver v. Mercy Med. Ctr., Inc., 695 F.2d 379, 381 (9th Cir.

7    1982) (holding § 778.114 did not apply in determining the rate of compensation for plaintiff-

8    employee's on-call overtime because it would have the effect of presuming that the parties agreed to

9    an hourly rate below the statutory minimum wage and because there was "no evidence that either

10    party intended that [the employee] would not be paid overtime compensation for those hours").

11    The instant case is analogous.  FedEx Ground assumed it was not Plaintiffs' joint employer and

12    therefore did not award overtime.  Now that the Court had deemed FedEx Ground to be a joint

13    employer in this instance, the undisputed evidence that Plaintiffs clearly understood that they would be

14    paid a fixed weekly salary regardless of the number of hours they worked means that the fluctuating

15    workweek is an appropriate method of calculating any overtime compensation due.

16    Plaintiffs cite a district court case that reached the opposite conclusion.  Rainey v. Am. Forest

17    & Paper Assoc., Inc., 26 F. Supp. 2d 82 (D.D.C. 1998); see also Cowan v. Treetop Enter., Inc., 163

18    F. Supp. 2d 930 (M.D. Tenn. 2001) (citing Rainey).  The Rainey court held that the plain language of

19    the regulation required contemporaneous payment of the overtime compensation if the employer was

20    going to use the fluctuating workweek method of calculating overtime compensation.  26 F. Supp. 2d

21    at 100-01.  This Court does not find this reasoning persuasive and declines to follow it.

22    Summary judgment in favor of FedEx Ground is granted on this issue.  Once the fact finder

23    determines the number of overtime hours worked each week, any overtime compensation due will be

24    calculated by dividing the total hours worked each week by $600 (Plaintiffs' weekly salary) and then

25

1   multiplying half that "hourly rate" by the number of hours in excess of forty that each Plaintiff worked

2   that week.

3          C.  Double Damages under the FLSA and the MWA

4          Plaintiff seeks summary judgment that double damages are warranted under either the FLSA,

5   or alternatively the MWA.  FedEx Ground seeks summary judgment that double damages are not

6   warranted under either statute.

7          Under the FLSA, an employer who fails to pay overtime as required by § 207 is liable to the

8   employee for the unpaid overtime compensation "and in an additional equal amount as liquidated

9   damages."  29 U.S.C. § 216(b).  Double damages are the norm, single damages are the exception.

10  Local 246 Util. Workers Union of Am. v. S. Cal. Edison Co., 83 F.3d 292, 297 (9th Cir. 1996).  A

11  district court has the discretion, however, to decline to award double damages or to award less than

12  double damages if the employer shows that it acted in subjective good faith and had objectively

13  reasonable grounds for believing its conduct did not violate the FLSA.  § 260.  "Good faith is an

14  honest intention to ascertain what the FLSA requires and to act in accordance with it."  Local 246, 83

15  F.3d at 298 (quotation and citation omitted).  An employer might satisfy this burden if it "had secured

16  some objective authority, or at the very least sought advise on the legality of treating [the two

17  companies deemed joint employers] as separate employers for the purpose of calculating overtime ...."

18  Chao v. A-One Medical Services, Inc., 346 F.2d 908, 920 (9th Cir. 2003).  But if the employer treats

19  the two companies as separate for the purpose of avoiding the FLSA's requirements, the employer

20  fails to meet this burden.  Id. at 919 n.7.  See Alvarez, 339 F.3d at 910 (employer liable for liquidated

21  damages if it failed to take steps necessary to ensure its practices complied with the FLSA;

22  "[m]istaking ex post explanation and justification for the necessary affirmative 'steps' to ensure

23  compliance, [the employer] offers no evidence to show that it actively endeavored to ensure such

24  compliance").  If the employer fails to satisfy this burden, liquidated damages are mandatory.  Local

25  246, 83 F.3d at 297.

ORDER - 9

1    FedEx Ground's belief that it was not Plaintiffs' joint employer was not objectively reasonable.

2    FedEx Ground has not presented any evidence of any steps it took to ensure its compliance with the

3    FLSA as regards the secondary van drivers such as Plaintiffs.  To avoid double damages under the

4    FLSA, Chao requires that FedEx Ground show that it "had secured some objective authority, or at the

5    very least sought advise on the legality" of its position.  346 F.2d at 920.  FedEx Ground points to

6    numerous legal proceedings as evidence that it had relied on such objective authority.  However, this

7    evidence is of marginal value at best.  FedEx Ground claims that numerous legal proceedings found

8    that "various Contractors were not employees of FedEx Ground for purposes of various employment

9    law claims."  (Kruse Decl., ¶ 8, Ex. G).  However, Exhibit G is only a list of legal proceedings; there is

10   no evidence indicating what the legal issues or the outcomes were.  FedEx Ground also points to a

11   judgment in Mailhot v. FedEx Ground Package Sys., Inc., from a New Hampshire district court in

12   which the jury found that plaintiff was not an employee of FedEx Ground.  (Id., ¶ 9, Exs. H and I).

13   Again, there is no indication what plaintiff's job duties involved.  In any event, the legal status of the

14   Contractors is a distinct issue from FedEx Ground's status as a joint employer of the secondary van

15   drivers such as Plaintiffs.  Even if the Contractors are independent contractors, this would not

16   preclude FedEx Ground from being a joint employer (with the Contractors) of the secondary van

17   drivers.[3]  FedEx Ground also points to a letter from the IRS indicating that "operations conducted in

18   accordance with [the operating agreement contracts with the Contractors] are not inconsistent with an

19

20        _____

21        [3]  Plaintiffs claim that FedEx Ground's history with the National Labor Relations Board
     ("NLRB") put it on notice of its employer obligations.  It is worth noting that this argument suffers
22   from similar problems.  Plaintiffs point to an NLRB decision involving FedEx Ground's predecessor
     company in which the NLRB concluded that drivers were employees not independent contractors
23   under the National Labor Relations Act ("NLRA").  N.L.R.B. v. Roadway Package Sys., Inc., 326
     N.L.R.B. 842 (1998).  However, it is difficult to glean much from this decision because it is not clear
24   if FedEx Ground's predecessor conducted it operations similarly to FedEx Ground's current
     operations.  Furthermore, according to FedEx Ground, there were further legal proceedings in this
25   case that resulted in a different outcome, and different legal standards are used under the FLSA than
     under the NLRA.

1    independent-contractor relationship with [the Contractors]." (Edmonds Decl., Ex. A). Again, this is

2    of marginal relevance. It does not address the legal standards for a "joint employment" relationship

3    under the FLSA nor does it address the secondary van drivers such as Plaintiffs.

4          In short, none of these other legal proceedings has any strong bearing on the question here,

5    namely whether FedEx Ground had objectively reasonable grounds to believe that it was not Plaintiffs'

6    joint employer. By failing to take any steps to ensure the legality of its position that it was not a joint

7    employer, FedEx Ground's actions did not demonstrate that it had objectively reasonable grounds for

8    believing its conduct did not violate the FLSA. The fact that the instant case may be the first to raise

9    the issue of FedEx Ground's status as a joint employer of the secondary van drivers does not

10   necessarily mean that FedEx Ground's interpretation of the legal issue was objectively reasonable.

11   Therefore, it is of no moment that there are multiple relevant factors used in determining whether an

12   entity is a joint employer and that the Court found that a few of the factors did not indicate that FedEx

13   Ground was a joint employer. Similarly, even if the Court accepted FedEx Ground's argument that it

14   subjectively believed in good faith that it was not Plaintiffs' joint employer and need not pay overtime

15   compensation, as evidenced by its operating agreements with the Contractors and its lack of

16   involvement in paying Plaintiffs their wages, this does not negate the Court's conclusion that FedEx

17   Ground's belief was not objectively reasonable.

18         Double damages are warranted under the FLSA. Because the Court grants summary judgment

19   in favor of Plaintiffs on this issue, the Court need not reach Plaintiffs' alternative request for double

20   damages under the MWA.

21         D.  Statute of Limitations Under FLSA

22         Under 29 U.S.C. § 255, if an employer's conduct amounts to a "willful" violation of the FLSA,

23   a three year statute of limitations applies rather than the normal two year statute of limitations under

24   the FLSA. This is a mixed question of law and fact. Alvarez, 339 F.3d at 908. A violation is willful if

25   the employer knew its conduct violated the FLSA or recklessly disregarded whether it was violating

1   the FLSA. <u>Chao</u>, 346 F.3d at 914. "[A]n employer need not knowingly have violated the FLSA;

2   rather, the three-year term can apply where an employer disregarded the very 'possibility' that it was

3   violating the statute although [the court] will not presume that conduct was willful in the absence of

4   evidence." <u>Id.</u> at 908-09 (citation omitted).

5          There is a distinct difference between the double damages determination and the willfulness

6   determination. Double damages are the norm. The employer may assert as a defense to imposition of

7   double damages that it acted in subject good faith and on objectively reasonable grounds. Thus, the

8   employer has the initial burden. In contrast, the three year statute of limitations is not the norm. The

9   employer's conduct is deemed willful under § 255 only if there is evidence that the employer knew its

10  conduct violated the FLSA or recklessly disregarded whether it was violating the FLSA. Thus, the

11  plaintiff has the initial burden of presenting evidence to prove the employer's willfulness. <u>See id.</u> at

12  919 n.7 ("[T]wo employers may share employees but make serious efforts to 'completely disassociate'

13  themselves with respect to the employment of the shared individuals. . . . [T]he efforts at separateness

14  might, at the very lesst, make willfulness a question more appropriate for a jury than for disposition on

15  summary judgment.").

16         Here, Plaintiffs have not presented sufficient evidence that FedEx Ground's conduct was

17  willful. While it is undisputed that Plaintiffs complained to FedEx Ground managers about not being

18  paid overtime to which the managers responded that this was a matter between Plaintiffs and the

19  Contractors, this is not sufficient to meet Plaintiffs' burden on this issue. FedEx Ground's efforts to

20  disassociate itself from the Contractors by use of the contracting agreements sufficiently rebuts

21  Plaintiffs' evidence to create an issue of fact that is most appropriate for the fact finder. Therefore, the

22  Court does not grant summary judgment on this issue to either party.

23         E.  Injunctive Relief Under the FLSA and the MWA

24         In their complaint, Plaintiffs sought injunctive relief requiring Defendants to treat all current

25  and future drivers as their employees. (Compl., ¶ 5.3). However, it is undisputed that Plaintiffs are no

ORDER - 12

1   longer pursuing this case as a class action.  Further, it is undisputed that Plaintiffs no longer work as

2   drivers for FedEx Ground.  Therefore, Plaintiffs have no standing to seek injunctive relief.  Summary

3   judgment in favor of FedEx Ground is granted on this issue.

4   II.  Tumulty's Retaliatory Discharge Claim

5           Both the FLSA and the MWA prohibit an employer from discharging or in any other way

6   discriminating against an employee for filing a complaint or instituting a proceeding under the FLSA

7   or the MWA respectively.  29 U.S.C. § 215(a)(3); RCW 49.46.100(2).  While there is no Ninth

8   Circuit case on point, other circuits have held that the burden shifting scheme in McDonnell Douglas

9   Corp. v. Green, 411 U.S. 792, 802 (1972), applies to FLSA retaliation claims.[4]  See Conner v.

10  Schnuck Mkts., Inc., 121 F.3d 1390, 1394 (10th Cir. 1997); Brock v. Casey Truck Sales, Inc., 839

11  F.2d 872, 876 (2d Cir. 1988).  This requires the employee to establish a prima facie case that 1) he

12  engaged in protected activity, 2) he suffered an adverse employment action, and 3) there was a causal

13  link between the protected activity and the employment decision.  Cf. Raad v. Fairbanks N. Star

14  Borough Sch. Dist., 323 F.3d 1185, 1196-97 (9th Cir. 2003) (applying these elements to a retaliation

15  claim under Title VII).  The burden then shifts to the employer to offer a legitimate reason for the

16  plaintiff's termination.  Finally, the burden shifts back to the employee to prove by a preponderance of

17  the evidence that the reason offered was merely a pretext for the retaliatory motive.  It is undisputed

18  that Tumulty suffered an adverse employment action when he was fired on January 31, 2003.

19  However, there are genuine issue of fact as to whether Tumulty engaged in a protected activity and

20  whether he can show causation, as well as whether FedEx Ground fired Tumulty for a legitimate

21  reason or as a pretext for a retaliatory motive.

22          A.  Tumulty's Prima Facie Case

23  _____

24      [4]  As noted above, Washington courts generally follow the framework utilized for FLSA
    actions for MWA actions.  Therefore, the foregoing analysis and conclusion applies equally to
25  Tumulty's MWA retaliatory discharge claim.

1    The parties dispute whether Tumulty engaged in protected activity when he discussed overtime

2    in his conversation with FedEx Ground manager Chip Anderson on January 29, 2003 (two days before

3    he was fired). The Ninth Circuit interprets the FLSA broadly such that an informal complaint to the

4    employer may constitute a protected activity. <u>Lambert v. Ackerley</u>, 180 F.3d 997, 1004 (9th Cir.

5    1999). While "not all amorphous expressions of discontent related to wages and hours constitute

6    complaints filed within the meaning of § 215(a)(3)," the complaint need not be formal or highly

7    detailed and need not refer to the statute by name. <u>Id.</u> at 1007-08. "[S]o long as an employee

8    communicated that *substance* of his allegations to the employer," he is protected by § 215(a)(3). <u>Id.</u>

9    at 1008 (emphasis in original).

10    On July 29, 2003 (Tumulty's last day working as a driver) Tumulty entered Anderson's office

11    to pick up a map. Tumulty testified in deposition that Anderson asked him about why he quit driving

12    for Clere. Tumulty responded that he was tired of working overtime without compensation. He

13    further testified that he told Anderson that he was not going to work overtime without being paid for

14    it. Anderson said that this was a matter between him and his Contractor. Tumulty testified that this

15    conversation with Anderson began because he asked Anderson about how much money the

16    Contractors made. He said that he asked this because he wanted to understand the economics

17    involved since Clere had told Tumulty that he could not afford to pay overtime. Later in the

18    deposition, he said that he was talking generally about buying routes and the economics of the

19    Contractors' arrangements because Anderson was under the impression that he wanted to buy a route.

20    Also, later in the deposition, he testified that his comments were not limited to when he worked for

21    Clere, but concerned his unhappiness with working overtime in general. The conversation lasted for

22    approximately five minutes. Tumulty characterized it as a friendly conversation. Anderson did not

23    appear angry as a result of the conversation.[5]

24    ─────────────────

25    [5] Tumulty had also complained to three other FedEx Ground managers in May, 2002 about
not being paid overtime when he worked for Clere. Two managers responded that this was a matter

1    FedEx Ground maintains that Tumulty's comments to Anderson were not complaints within

2    the meaning of § 215(a)(3) because they related to the time period when Tumulty drove for Roy Clere

3    and were not directed at FedEx Ground.  FedEx Ground points to case law for the proposition that

4    complaints about former employers are not protected activity.  This argument ignores the fact that

5    FedEx Ground has been deemed Tumulty's joint employer under the FLSA.  According to FedEx

6    Ground, because it had no role in setting Tumulty's hours and paying his wages, Tumulty could not

7    have thought his complaint to Anderson was protected under the FLSA.  This argument also fails

8    because the employee need not know the intricacies of who is a joint employer and who is not under

9    the FLSA.  Lastly, FedEx Ground maintains that Tumulty's comments were general and vague and

10   thus did not raise to the level of a complaint under Ackerley.  FedEx Ground's arguments are

11   somewhat inconsistent.  First, it argues that Tumulty's comments specifically concerned when he

12   worked for Clere and were clearly not directed at FedEx Ground.  But it then argues that Tumulty's

13   comments were vague and general expressions of unhappiness with not being paid overtime.  Tumulty

14   characterizes the conversation differently.  He claims that he unequivocally told Anderson that he

15   would not work overtime anymore.  Tumulty's testimony supports both parties' respective

16   interpretations.  Therefore, Tumulty's testimony is sufficient to establish a prima facie case that his

17   comments to Anderson amounted to substantive complaint about not being paid overtime.

18   Causation can be inferred when the termination occurs soon after the employee engages in a

19   protected activity.  Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1065 (9th Cir. 2002)

20   ("causation can be inferred from timing alone where an adverse employment action follows on the

21   heels of protected activity").  Here, the discussion between Tumulty and Anderson occurred on July

22

23   between Tumulty and the Contractor.  The third manager did not respond to Tumulty's comments.
     This was the same time that Tumulty worked as a temp at the request of one of the FedEx Ground
24   managers, who told him that he should not work more than 8 hours per day.  These events are not
     particularly relevant because they occurred between six and seven months before Tumulty was
25   discharged.

1  29, 2003 and Tumulty was fired the next time he was scheduled to work, which was two days later on

2  July 31, 2003.

3       B.  Reason for Termination

4       The parties also dispute whether Tumulty was fired for a legitimate reason or as a pretext for a

5  retaliatory motive.  To prevail on a retaliatory discharge claim, the employee "must show that [his]

6  protected activities were a 'substantial factor' in the complained of adverse employment action.

7  Protected activities are a 'substantial factor' where the adverse actions would not have been taken 'but

8  for' the protected activities."  Knickerbocker v. City of Stockton, 81 F.3d 907, 911 (9th Cir. 1996)

9  (citation omitted).  FedEx Ground maintains that Tumulty was fired because he failed to deliver a

10  significant number of packages on July 29, which was unacceptable for a driver with his experience.

11  Tumulty does not dispute that he was supposed to deliver all the packages in his truck and that he filed

12  to do so, but maintains that this was a pretext to fire him to disguise Anderson's retaliatory motive.

13       In his deposition, Tumulty conceded that he did not deliver "a lot" of the packages, and that

14  this was more than the normal volume of undelivered packages.  (Tumulty Dep., 206-07).  When he

15  called in on the morning of July 31, 2003, Anderson confronted him about not delivering all the

16  packages.  He responded that he was not able to do so because the rental truck he was using did not

17  have shelves and therefore the load was very unorganized, and because the deliveries covered

18  significant distances.  Anderson then told Tumulty he was no longer needed.  Anderson testified that

19  Tumulty failed to deliver an "extraordinary" number of packages that day and that he failed to notify

20  anyone at the terminal that he would not be able to do so.  He testified that the only reason he fired

21  Tumulty was because of this failure to deliver the packages.

22       According to Tumulty, he had brought back undelivered packages before but had never been

23  fired, although he concedes that a FedEx Ground manager had shown his displeasure on one occasion.

24  He testified that he had never been required to contact anyone at the terminal when he was not able to

25  deliver all of the packages.  He testified that the number of packages he brought back on July 29 was

ORDER - 16

1    greater than other times, but not by much.  Anderson conceded in his deposition that he had never

2    fired a temp driver before for not delivering a significant number of packages.  Further, the records

3    indicate that Tumulty drove 120 miles that day compared to what he claims was normally 5-10 miles.

4    Add to this the fact that the records also indicate that he delivered more packages than all but one

5    temp that day together with the fact that this other temp had to make only 15 stops compared to

6    Tumulty's 22 stops that day.  All of this together is sufficient to create an inference that his

7    performance was not so unreasonable and that he was fired for other reasons.  In other words, this

8    undermines FedEx Ground's claim that Tumulty would not have been fired but for his failure to

9    deliver all the packages in his truck on July 29.  While FedEx Ground has met its burden of showing a

10   legitimate reason for firing Tumulty, Tumulty has also met his burden of showing that the reason

11   offered was a pretext for a retaliatory motive.  These issues must be decided by the fact finder.

12   Summary judgment is not warranted on Tumulty's retaliatory discharge claim.

13       C.  Punitive Damages

14           Tumulty seeks punitive damages in conjunction with his FLSA retaliation claim.  (He concedes

15   that such damages are not available under his state law claims.)  Section 216(b) of the FLSA outlines

16   the remedies available for a violation of § 215(a)(3):

17           such legal or equitable relief as may be appropriate to effectuate the purposes of
             section 215(a)(3) of this title, including without limitation employment, reinstatement,
18           promotion, and the payment of wages lost and an additional equal amount as
             liquidated damages.
19
20   29 U.S.C. § 216.  The parties dispute whether the FLSA allows punitive damages.  The Ninth

21   Circuit has not addressed the issue and the two circuits that have are split.  Snapp v. Unlimited

22   Concepts, Inc., 208 F.2d 928 (11th Cir. 2000) (punitive damages not available); Travis v. Gary

23

24

25

1  Cmty. Mental Health Ctr., Inc., 921 F.2d 108 (7th Cir. 1991) (punitive damages available).[6]

2

3       This Court finds the decision in Snapp well reasoned and persuasive.  The Eleventh

4  Circuit analyzed in detail the legislative history and overarching purpose of the retaliation

5  provision in the FLSA and concluded that Congress intended that the remedies would

6  compensate the plaintiff, but did not intend to allow punitive damages as shown by the fact that

7  punitive damages are allowed under § 216(a).  208 F.3d at 933-38.  The decision in Snapp

8  presents a more detailed legislative history and analysis than that in Travis.  The Court agrees

9  with the analysis and the conclusion in Snapp and therefore grants summary judgment in favor

10  of FedEx Ground that punitive damages are not allowed for retaliation claims under the FLSA.

11

12                                    CONCLUSION

13       The Court GRANTS in part and DENIES in part Plaintiffs' motion regarding overtime

14  claims, GRANTS in part and DENIES in part FedEx Ground's motion regarding remedies,

15  and GRANTS in part and DENIES in part FedEx Ground's motion regarding Tumulty's

16  retaliatory discharge claim.  There are genuine issues of fact as to the exact number of

17  overtime hours Plaintiffs worked which precludes summary judgment on their overtime claim.

18  However, the appropriate method of calculating any overtime compensation due is the

19  "fluctuating workweek" method outlined in 29 C.F.R. § 778.114.  Double damages are

20  warranted under the Fair Labor Standards Act for any overtime violations.  There are genuine

21  issues of fact as to whether the three-year statute of limitations under the FLSA for overtime

22  claims applies in this case.  There are also genuine issues of fact regarding whether FedEx

23

24       [6]  In Lambert, the Ninth Circuit did not reach the issue because the defendant had waived it, but the court nonetheless indicated in dicta that the reasoning in Travis was persuasive.  180 F.3d at 1011.  However, as FedEx Ground points out, the court made this statement before the Eleventh

25  Circuit had issued its opinion in Snapp.

ORDER - 18

1    Ground fired Tumulty in retaliation for comments Tumulty made about not being paid

2    overtime.  However, the FLSA does not provide for punitive damages for retaliation claims.

3          The clerk is directed to provide copies of this order to all counsel of record.

4          Dated: August ___, 2005

5

6                                        _____

7                                        Marsha J. Pechman
                                         United States District Court

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

ORDER - 19